UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE GALVEZ,<br><br>    Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>    Defendants. | Case No.17-cv-06003-JSC<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 14 |

Plaintiff Julie Galvez brings this action alleging violations of the California Homeowner's Bill of Rights (the "HBOR"), as well as other statutory and common law claims, against Defendant Wells Fargo Bank, N.A. ("Wells Fargo") in an effort to enjoin the foreclosure of her home. Wells Fargo's motion to dismiss the First Amended Complaint is now pending before the Court.[1] (Dkt. No. 14.) Having considered the parties' briefs and having had the benefit of oral argument on January 11, 2018, the Court GRANTS IN PART and DENIES IN PART Wells Fargo's motion to dismiss. Although Plaintiff's claims are not barred by the doctrine of judicial estoppel, Plaintiff has failed to adequately allege claims for violation of the Homeowner's Bill of Rights, negligence, misrepresentation, or California Business and Professions Code section 17200.

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 9, 11 & 21.)

**BACKGROUND**

**A. Complaint Allegations**

Plaintiff owns real property at 713 Miramar St. Windsor, California 95492. (First Amended Complaint ("FAC") ¶ 9.) In May 2005, Plaintiff refinanced the mortgage loan for the property and executed a Promissory Note and Deed of Trust in favor of World Savings Bank, FSB. (*Id*.) The loan was subsequently transferred to Wachovia Mortgage, FSB, and then to Wells Fargo when it merged with Wachovia Mortgage.[2] (*Id*.) Wells Fargo is the current owner and servicer of Plaintiff's loan and Clear Recon is the foreclosure trustee. (*Id*.)

In December 2016, Plaintiff submitted an application for a loan modification to Wells Fargo. (*Id.* at ¶ 11.) The following month, Plaintiff was notified that her application was incomplete. (*Id*.) Although Plaintiff's application was apparently denied on February 14, 2017, Plaintiff never received written notice of the denial and was not advised of the denial at all until July 14, 2017 during a phone call. (*Id*. at ¶ 12.) Thus, unaware that her application had been denied, Plaintiff recontacted Wells Fargo about foreclosure prevention alternatives in June 2017. (*Id*. ¶¶ 12-13.)

On June 27, 2017, Plaintiff spoke to a Wells Fargo representative, Lacresa, who requested income documents for Plaintiff's "reentry into the loan modification process." (*Id*. ¶ 14.) Plaintiff provided the requested documents. (*Id*.) That same day, Plaintiff received a call from another

---

[2] Pursuant to Federal Rule of Evidence 201, the Court "may judicially notice a fact that is not subject to reasonable dispute because it: (i) is generally known within the trial court's territorial jurisdiction; or (ii) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Judicial notice is appropriate for "materials incorporated into the complaint or matters of public record." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Courts in this District regularly take judicial notice of publicly recorded documents related to real property, including deeds of trust, assignments and substitutions thereto, trustee's deeds upon sale, rescissions of notices of default, and elections to sell under a deed of trust. *See, e.g.*, *Valasquez v. Mortg. Elec. Registration Sys., Inc*., No. C 08–3818 PJH, 2008 WL 4938162, at *2–3 (N.D. Cal. Nov. 17, 2008); *Hotel Emps. & Rest. Emps. Local 2 v. Vista Inn Mgmt. Co*., 393 F.Supp.2d 972, 977–78 (N.D. Cal. 2005); *W. Fed. Sav. & Loan Ass'n v. Heflin*, 797 F.Supp. 790, 792 (N.D. Cal.1992). Here, Wells Fargo requests that the Court take judicial notice of Exhibits A, B, & L, which are such publicly recorded documents relating to the Property at issue in this case. (Dkt. No. 15.) However, Wells Fargo has failed to submit exhibit L—the Notice of Default—with its request for judicial notice and as such there is no document of which the Court can take judicial notice. The motion is thus DENIED as to Exhibit L. Exhibits A and B are properly attached and judicially noticeable and the Court GRANTS Wells Fargo's request for judicial notice of these documents.

Wells Fargo representative who advised her that the active foreclosure status on her home had been removed. (*Id.* ¶ 15.) Also this same day, Plaintiff received a call from another Wells Fargo representative, Qwatashia, who requested two additional documents—proof of income from Plaintiff's husband and proof of occupancy. (*Id.* ¶ 16.) Plaintiff asked Qwatashia about having a new appraisal done for the property since the last appraisal had significantly undervalued the home. (*Id.*) Plaintiff was told that only Eric Graves could order a new appraisal and Plaintiff needed to submit a written request for a new appraisal to Wells Fargo's Home Preservation Department. (*Id.*)

About two weeks later, Plaintiff had compiled all of the necessary information and contacted Wells Fargo to request a new appraisal. (*Id.* ¶ 17.) Plaintiff spoke to Wells Fargo Reentry Department employee Dustin who told her that Wells Fargo had received all of the documents necessary to get an appraisal ordered. (*Id.*) Plaintiff was then transferred to Eric Graves who confirmed that he had all of the necessary documents and that the file had been re-opened. (*Id.*) Mr. Graves advised Plaintiff that Christine was processing the application and that she was in review for a short sale option, although she had not applied for a short sale. (*Id.* ¶ 18.) At Plaintiff's request, Mr. Graves stated that he would tell Christine to remove the short sale option. (*Id.*)

Three days later, Plaintiff contacted Wells Fargo and spoke with Amanda Gonzales who told her that her application had never been reviewed for a HAMP modification. (*Id.* ¶ 19.) According to Ms. Gonzales, Plaintiff was not in the Home Preservation Department and to obtain such a review Plaintiff needed to go through reentry and start the process over again. (*Id.*) Plaintiff was then transferred to a representative named Tanya who was part of the Reentry Department. (*Id.* ¶ 20.) Tanya told Plaintiff that she could only be reviewed for a loss mitigation application if she demonstrated a change in income. (*Id.*) Tanya requested information regarding Plaintiff's financial situation which she provided. (*Id.* ¶¶ 20-21.)

On July 18, 2017, Plaintiff spoke with Kwamee in the Home Preservation Department because that was where her application had been transferred. (*Id.* ¶ 22.) Plaintiff provided the documents to Kwamee who told her that no foreclosure sale date was scheduled for the property.

3

(*Id.*) Less than a week later, Plaintiff contacted Wells Fargo to follow up and spoke with Bobby Anderson who advised her that her materials had been received the week before and were in review. (*Id.* ¶ 23.) Plaintiff was again assured that no foreclosure sale was scheduled. (*Id.*) The next day, Plaintiff received notice that her loan file had been removed from the short sale process, but she had never requested that it be considered for a short sale. (*Id.* ¶ 24.) The following day Eric Graves advised Plaintiff that her application was not in active review, but it would be within the next several days. (*Id.*) This never happened; instead, Plaintiff later learned that on or about July 20, 2017—two days after she submitted her completed loan modification application—Clear Recon had prepared and then recorded a Notice of Default on the property.[3] (*Id.* ¶¶ 26, 32.)

**B. Procedural History**

Plaintiff filed this action in the Sonoma County Superior Court on September 17, 2017 against Defendants Wells Fargo and Clear Recon. (Dkt. No. 1-1.) Plaintiff alleged three claims for violation of California's Homeowner's Bill of Rights, a negligence claim, and violation of California Business and Professions Code section 17200. Wells Fargo did not appear in the state court action, but Clear Recon, the substituted trustee on the Deed of Trust, filed and served a Declaration of Non-Monetary Status ("DNMS") on October 3, 2017 pursuant to California Civil Code section 2924l which permits a trustee to file a DNMS if it is named in a state-court action "solely in its capacity as trustee, and not arising out of any wrongful acts or omissions on its part in the performance of its duties as trustee." Cal. Civ. Code § 29241(a). (Dkt. No. 1-1 at 21.[4]) Because Plaintiff did not object within 15 days, Clear Recon became a nominal party to the action. *Id.* § 29241(d). Wells Fargo thereafter removed the action to federal court based on diversity of citizenship.

Following removal, Plaintiff filed her First Amended Complaint adding claims for

---

[3] Wells Fargo contends that the Notice of Default was dated July 18—the same day Plaintiff submitted her completed application—but Wells Fargo failed to attach the actual Notice of Default as Exhibit L to their Request for Judicial Notice. (Dkt. No. 15.) It is referenced in the declaration, but it was not electronically filed nor was the Court provided a chambers copy. For purposes of this 12(b)(6) motion, the Court takes the facts alleged in the FAC as true absent evidence to the contrary.

[4] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

4

negligent and intentional misrepresentation to those previously pled claims. (Dkt. No. 12.) Wells Fargo responded by filing the now pending motion to dismiss in which Clear Recon joined. (Dkt. Nos. 14 & 18.) At the hearing on the motion to dismiss, the Court raised the issue of its subject matter jurisdiction and whether the presence of Clear Recon—a California corporation—defeated diversity jurisdiction. (Dkt. No. 24.) Following the hearing, the Court issued an order to show cause regarding its subject matter jurisdiction. (Dkt. No. 25.) In response, Plaintiff voluntarily dismissed her claims as to Clear Recon which resolved any issue regarding the Court's subject matter jurisdiction. (Dkt. No. 26.) The parties thereafter participated in mediation, which was unsuccessful. (Dkt. No. 32.)

**C. Plaintiff's Bankruptcy Proceedings**

Plaintiff first filed a Chapter 7 bankruptcy in June 2011, a year after she defaulted on the underlying loan. (Dkt. No. 15-1 at 23.[5]) This petition was discharged in September 2011. (*Id*. at 26.) Plaintiff then filed a Chapter 13 bankruptcy petition in October 2011. (*Id*. at 29.) That petition was dismissed in April 2014. (*Id*. at 36.) Plaintiff then filed another Chapter 13 petition three months later. (*Id*. at 39.) This bankruptcy proceeding remains open and Wells Fargo's motion to lift the automatic stay was granted in June 2017. (*Id*. at 51.)

**DISCUSSION**

Wells Fargo moves to dismiss all of Plaintiff's claims. As a threshold matter, Wells Fargo insists that Plaintiff's claims are barred by the doctrine of judicial estoppel. Alternatively, Wells Fargo argues that her claims fail to state a claim upon which relief can be granted.

**A. Judicial Estoppel**

The doctrine of judicial estoppel has developed "to protect the integrity of the judicial process, ... by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (internal citation and

---

[5] Wells Fargo also moves for judicial notice of various documents filed in connection with the bankruptcy proceeding. (Dkt. No. 15.) Generally, a "court may take judicial notice of court filings and matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, I*nc., 442 F.3d 741, 746 (9th Cir. 2006). Accordingly, Wells Fargo's request for judicial notice of Exhibits C-K is GRANTED. Likewise, Plaintiff's request for judicial notice of filings from the bankruptcy proceedings is GRANTED. (Dkt. No. 16-1.)

5

quotations omitted). The Ninth Circuit has laid out three factors a court should consider in determining whether judicial estoppel applies in the context of bankruptcy proceedings. *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782-83 (2001). A court must consider (1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled, and (3) whether the party seeking to assert an inconsistent position would cause the opposing party unfair detriment if not estopped. *Id*.

In the bankruptcy context, the Ninth Circuit recognizes "a basic default rule" that where "a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the action," because the bankruptcy court relied on the representation that the plaintiff did not have a claim. *Ah Quin v. Cty. of Kauai Dep't of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013); *see also Hamilton*, 270 F.3d at 784 ("In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements."). The Ninth Circuit has held that a "presumption of deliberate manipulation" of the bankruptcy courts applies if a claim is omitted and the debtor does not "file[ ] amended bankruptcy schedules that properly list[ ] th[e] claim as an asset." *Ah Quin*, 733 F.3d at 272–73.

Here, however, this action arose while the bankruptcy action was pending and Plaintiff amended her bankruptcy schedules to list this action prior to the bankruptcy court taking any dispositive action on the bankruptcy petition. (Dkt. No. 16-1 at 23.) Thus, as in *Ah Quin*, Plaintiff corrected the error such that the "presumption of deliberate manipulation" does not apply. *Ah Quin*, 733 F.3d at 272 ("A key factor is that Plaintiff reopened her bankruptcy proceedings and filed amended bankruptcy schedules that properly listed this claim as an asset."). Further, the claims which give rise to this lawsuit did not arise until well after the bankruptcy action was filed. *See Amer v. Wells Fargo Bank NA*, No. 17-CV-03872-JCS, 2017 WL 4865564, at *13 (N.D. Cal. Oct. 27, 2017) (finding that judicial estoppel did not apply to bar claims which arose after the bankruptcy action and bankruptcy schedules were filed).

6

Ultimately, judicial estoppel is a discretionary doctrine, applied on a case-by-case basis. *See New Hampshire*, 532 U.S. at 751. The Court concludes that under the facts here judicial estoppel does not apply and denies Wells Fargo's motion to dismiss on that basis.

## B. California's Homeowners Bill of Rights

Plaintiff makes claims under California Homeowners Bill of Rights, Civil Code section 2923.6(c) (first cause of action), 2923.7(e) (second cause of action), and 2923.7(b)(5) (third cause of action). Civil Code section 2924.12 provides a private cause of action for violations of these statutes.[6] In particular, a plaintiff may recover the following remedies:

> (a) (1) If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.55, 2923.6, 2923.7 ...,
>
> (b) After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section 2923.55, 2923.6, 2923.7 ... by that mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale.

Cal. Civ. Code § 2924.12 (2015). Wells Fargo moves to dismiss all of Plaintiff's HBOR claims.

### 1) Former California Civil Code Section 2923.6[7]

Plaintiff contends that Wells Fargo violated section 2923.6's dual tracking prohibition when it recorded the Notice of Default on July 20, 2017 while her application for a loan modification was still pending. (FAC ¶¶ 26, 31-32.) Section 2923.6(c) prohibits a lender or its agent from recording a notice of default if the borrower has submitted a complete application for a

---

[6] The California Legislature amended section 2924.12 effective January 1, 2018 to, among other things, omit reference to 2923.6 in 2924.12. The prior version of the statute nevertheless governs the events that took place before the time of enactment, including the events underlying this case, because the prior version explicitly provided that it was effective from January 1, 2015, through December 31, 2017. *See* Cal. Civ. Code § 2924.12 (West 2015) ("operative until January 1, 2018").

[7] The California Legislature also amended and re-numbered section 2923.6 to section 2924.11 effective January 1, 2018, but as with section 2924.12, the prior version of the statute governs events that took place before the time of enactment, including the events underlying this case. The prior version of the HBOR explicitly provided that it was effective from January 1, 2013, through December 31, 2017. *See* Cal. Civ. Code § 2923.6(k) (West 2013) ("[t]his section shall remain in effect only until January 1, 2018").

7

first lien loan modification:

> If a borrower submits a complete application for first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until ... [the servicer] makes a written determination that the borrower is not eligible for a first lien loan modification.

Wells Fargo contends that subsection (g)'s exception to the dual tracking prohibition bars Plaintiff's claims. Under 2923.6(g) "the mortgage servicer shall not be obligated to evaluate applications from borrowers... who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer." Wells Fargo insists that because Plaintiff had already been considered for a loan modification in December 2016 and that request had been denied in February 2017, it was not required to consider her for another loan modification absent a material change in her financial circumstances which she has not alleged. Plaintiff counters that the February 2017 denial of her loan modification does not bar her July 2017 application because she alleges that she never received written notification of the denial, and did not actually receive any notice of the denial until she was advised of it during a call on July 14, 2017. (FAC ¶ 12.)

Wells Fargo's insistence that there is no requirement under section 2923.6(g) that the prior determination have been in writing is unpersuasive. Section 2923.6(c)(1) requires lenders to make a *written* determination regarding the loan modification. It would be nonsensical for 2923.6(c) to require denials to be in writing, but for 2923.6(g) to provide safe harbor for denials regardless of whether they were in writing. Tellingly, Wells Fargo cites no authority to support its argument. The Court is required to accept the allegations of the complaint as true; here, that Plaintiff never received a written denial of her loan modification request. Section 2923.6(g)'s safe harbor thus

8

does not apply.[8]

Plaintiff's section 2923.6 claim is nonetheless inadequately pled because Plaintiff has failed to plead a *material* violation of section 2923.6. *See* Cal. Civ. Code § 2924.12 (2015) (stating that a claim only lies for "material violations"). A violation of the Homeowner's Bill of Rights is material if it "'affected [the plaintiff's] loan obligations'" or the loan modification process. *Cardenas v. Caliber Home Loans, Inc.*, 281 F. Supp. 3d 862, 869 (N.D. Cal. 2017) (quoting *Johnson v. PNC Mortgage*, 2014 WL 6629585 (N.D. Cal. Nov. 21, 2014) (alterations in the original). Plaintiff alleges that she faces the active foreclosure of her Property and that she has never been able to obtain review of her application. (FAC ¶¶ 38, 45.) However, in her opposition brief, she states that she "is not suggesting [that] she was entitled to a modification." (Dkt. No. 16 at 17:9-10.) Given that Plaintiff does not contend that she was denied a loan modification to which she was entitled because of the dual tracking, or that the dual tracking affected her loan modification other than to leave her confused about its status, Plaintiff has not adequately alleged a material violation of section 2923.6.

Accordingly, Wells Fargo's motion to dismiss is granted with leave to amend to plead materiality. To the extent that Plaintiff amends her complaint and Wells Fargo again moves to dismiss, the parties shall address the question of whether Plaintiff is a borrower under section 2920.5(c)(2)(C) with standing to bring an HBOR claim. *See McCarthy v. Servis One, Inc.*, No. 17-CV-00900-WHO, 2017 WL 897422, at *7 (N.D. Cal. Mar. 7, 2017) ("For purposes of qualifying as a 'borrower' under HBOR, the appropriate focus is whether a HBOR violation occurred either prior to the filing of the bankruptcy case or after the bankruptcy case was dismissed, and whether bankruptcy proceedings are ongoing.").

---

[8] The Court declines to consider Wells Fargo's argument that in light of Plaintiff's ongoing bankruptcy proceedings section 2923.6's notice requirements did not apply to her since she was not a "borrower" under 2920.5(c)(2)(C) at the time her application was denied because Wells Fargo raised the argument for the first time on reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

9

**2) California Civil Code Section 2923.7**

Under section 2923.7, "[u]pon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." Cal. Civ. Code § 2923.7(a). The single point of contact ("single contact") is responsible for ensuring the borrower is adequately and timely assisted, such as communicating the process, coordinating the receipt of documents, notifying the borrower if any documents are missing, and adequately informing the borrower the status of foreclosure prevention alternative. *Id*. at subs. (b)(1)-(5). This provision is specifically "intended to prevent borrowers from being given the run around, being told one thing by one bank employee while something entirely different is being pursued by another." *Jolley v. Chase Home Finance, LLC*, 213 Cal.App.4th 872, 905 (2013).

Plaintiff pleads two claims under section 2923.7. First, that Wells Fargo violated 2923.7(e)'s requirement that "each member of the [point of contact] team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process." As relevant to this claim, Plaintiff alleges that in June of 2017 she received inconsistent information regarding the status of her ongoing review and whether she was in active foreclosure proceedings. (FAC at ¶¶ 37-38.) Second, Plaintiff pleads a claim for violation of 2923.7(b)(5) which requires that the single point of contact have "access to individuals with the ability and authority to stop foreclosure proceedings when necessary." With respect to this claim Plaintiff alleges that although she had a complete loan modification pending on July 18, 2017, a Notice of Default was recorded because "Defendant's representatives either failed to have access to an individual with the ability to stop the foreclosure proceedings, failed to inform that individual of the account's status, or misrepresented the status of the account to Plaintiff." (FAC at ¶ 44.)

Wells Fargo contends that Plaintiff's single point of contact claim fails as a threshold matter because Plaintiff has not alleged that she requested a single point of contact. In relevant part the language of section 2923.7 states:

> "(a) *Upon request from a borrower* who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of

10

> contact and provide to the borrower one or more direct means of
> communication with the single point of contact."

Cal. Civ. Code § 2923.7 (emphasis added). Plaintiff insists that despite the language "upon request from a borrower" subdivision (a) does not require homeowners to expressly request a single point of contact; instead, the requirement is triggered simply through a borrower's "seeking of a foreclosure prevention alternative." (Dkt. No. 16 at 16:28-17:1.) Wells Fargo counters that this reading of the statute is inconsistent with the plain language of the statute and would require the lender to appoint a single point of contact regardless of whether one was sought by the borrower.

Federal district courts are divided as to whether a borrower must specifically request a single point of contact or whether the statute is triggered by a request for a foreclosure prevention alternative. *See Green v. Cent. Mortg. Co*., 148 F. Supp. 3d 852, 874 (N.D. Cal. 2015) (collecting cases). This Court concludes that the statute only applies when borrowers request a single point of contact. If the loan modification process automatically triggered the single point of contact requirement, there would be no need to condition the requirement on a "request from the borrower." Plaintiff's argument that the language "[u]pon request from a borrower" pertains to a request for a loan modification or other foreclosure prevention alternative rather than a single point of contact ignores that subdivision (a) uses the word "requests" twice. It states: "[u]pon *request* from a borrower who *requests* a foreclosure prevention alternative ...." *See* Cal. Civ. Code § 2923.7(a) (emphasis added). There would be no reason to include the language "[u]pon request from a borrower" if all that was required to trigger the single point of contact requirement was the borrower's "request[] [of] a foreclosure prevention alternative." In other words, the "[u]pon a request from a borrower" language would be mere surplusage. *See Tuolumne Jobs & Small Bus. All. v. Superior Court*, 59 Cal. 4th 1029, 1037 (2014) ("[statutory] [i]nterpretations that lead to absurd results or render words surplusage are to be avoided."). Accordingly, the Court concludes that it must give meaning to the plain language of the statute: a borrower who requests a loan modification must also request a single point of contact for that obligation to trigger.[9]

---

[9] While not citable authority, the Court notes that the California Court of Appeal recently addressed this exact issue and observed that it could not locate "any prior reported decisions of a

11

Because Plaintiff has not alleged that she requested a single point of contact, Wells Fargo's motion to dismiss is granted. If Plaintiff can amend her complaint to allege that she requested a single point of contact, she must also amend to allege a material violation of section 2923.7 because as currently plead she has not.[10] Although Plaintiff contends that she was "given false and misleading information from a rotating cast of customer service representatives, rather than being able to speak consistently with a single point of contact," she has not alleged that this affected her application especially in light of her concession that she "is not suggesting she was entitled to a modification." (Dkt. No. 16 at 17:9-14.) *See Jacobik v. Wells Fargo Bank, N.A.*, No. 17-CV-05121-LB, 2017 WL 5665666, at *8 (N.D. Cal. Nov. 26, 2017) (granting motion to dismiss section 2923.7 claim because plaintiffs did not allege why the failure to assign a single point of contact "mattered or how it ultimately affected their ability to submit a completed loan application.").

**C. Negligence**

Wells Fargo insists that Plaintiff's negligence claim fails because it does not owe Plaintiff a duty of care, and even if it did, Plaintiff fails to allege sufficient facts to show Wells Fargo breached that duty.

"To prevail on [a] negligence claim, plaintiffs must show that [defendants] owed them a legal duty, that [they] breached the duty, and that the breach was a proximate or legal cause of their injuries." *Merrill v. Navegar*, Inc., 26 Cal.4th 465, 477 (2001). "A loan transaction is at arms-length and there is no fiduciary relationship between the borrower and lender." *Oaks Mgmt. Corp. v. Superior Court of San Diego Cnty.*, 145 Cal.App.4th 453, 466 (2006). Moreover,

---

California court on this issue, [but that] several federal district courts in California ha[d] come to conflicting conclusions as to whether a borrower must make an affirmative request to trigger the single point of contact requirement." *Conroy v. Wells Fargo Bank, N.A.*, No. C078914, 2017 WL 5711804, at *14 (Cal. Ct. App. Nov. 28, 2017), review denied (Feb. 21, 2018). The *Conroy* court came to the same conclusion regarding interpretation of section 2923.7 as the Court here.

[10] The amendment to section 2924.12 made no change with respect to claims under 2923.7; that is, a private right of action still lies for material violations of section 2923.7. *See* Cal. Civ. Code § 2924.12 (West 2018) ("if a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.5, 2923.7, 2924.11, or 2924.17.").

12

"California Courts have refused to impose duties on the trustee other than those imposed by statute or specified in the deed of trust." *Heritage Oaks Partners v. First Am. Title Ins. Co.*, 155 Cal.App.4th 339, 345 (2007).

California Courts are split on whether a loan servicer owes a duty of care to handle loans in such a way as to prevent foreclosure and forfeiture of property. *See Lueras v. BAC Home Loans Servicing*, LP, 221 Cal. App. 4th 49, 67–78 (2013) (holding no duty of care); *Alvarez v. BAC Home Loans Servicing*, 228 Cal. App. 4th 941 (2014) (holding loan servicer owed duty of care). Several federal district courts in California agree with *Lueras* that there is no common law duty of care by a servicer with regards to the key functions of a money lender. *See, e.g.*, *Peterson v. Wells Fargo Bank, N.A.*, No. 17-CV-05137-HSG, 2017 WL 6539743, at *5 (N.D. Cal. Dec. 21, 2017) (concluding the lender did not owe borrower a common law duty of care); *Alvarado v. 360 Mortg. Grp.*, LLC, No. 17-CV-04655 NC, 2017 WL 4647752, at *4 (N.D. Cal. Oct. 16, 2017) (same). "However, courts sometimes apply the so-called *Biakanja* factors to determine whether a duty is owed [to a borrower] under a narrow exception to the general rule." *Hutchins v. Nationstar Mortg. LLC*, No. 16-CV-07067-PJH, 2017 WL 4224720, at *14 (N.D. Cal. Sept. 22, 2017). These factors are: "the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958)).

The Ninth Circuit recently considered this issue and held "that application of the *Biakanja* factors does not support imposition of such a duty where, as here, the borrowers' negligence claims are based on allegations of delays in the processing of their loan modification applications." *Anderson v. Deutsche Bank Nat. Tr. Co. Americas*, 649 F. App'x 550, 552 (9th Cir.), cert. denied sub nom. *Anderson v. Aurora Loan Servs., LLC*, 137 S. Ct. 496 (2016). In so holding, *Anderson* relied upon language from *Lueras* noting that "when, as here, the modification was necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, [is] not ... closely connected to the lender's conduct. Similarly,

13

when 'the lender did not place the borrower in a position creating a need for a loan modification, [ ] no moral blame ... attache[s] to the lender's conduct.'" *Id.* (quoting *Lueras*, 221 Cal. App. 4th 49, 67 (2013) (brackets in original)); *see also Badame v. J.P. Morgan Chase Bank, N.A.*, 641 Fed.Appx. 707, 709 (9th Cir. 2016) (holding that the lender "did not owe Plaintiffs a duty of care when considering their loan modification application because 'a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money.'"); *Benson v. Ocwen Loan Servicing, LLC*, 562 Fed. Appx. 567, 569–70 (9th Cir. 2014) (concluding that the lender did not owe borrower a common law duty of care). While Plaintiff premises her negligence claim on Wells Fargo's failure to comply with its statutory obligations under HBOR and properly process her loan modification application, rather than delays in the processing of her loan modification application as in *Anderson*, the Ninth Circuit's reasoning applies equally to Plaintiff's allegations.[11] Accordingly, the Plaintiff has not plausibly alleged that Wells Fargo owed her a duty of case.

However, even if Wells Fargo did owe Plaintiff a duty of care, Plaintiff has failed to plead sufficient facts to show that duty of care was breached or how she was damaged as a result of any breach. Plaintiff alleges that Wells Fargo breached the duties owed to her under HBOR by "actively foreclosing on her property during the course of a loan modification review" and failing to assign her a single point of contact. (FAC ¶ 53.) The Court, however, has dismissed Plaintiff's HBOR claims because Plaintiff has failed to adequately allege a material violation of the statute. These claims thus cannot serve as the predicate for Plaintiff's negligence claim and Wells Fargo's motion to dismiss the negligence claim is granted.

**D. Negligent and Intentional Misrepresentation**

Next, Wells Fargo moves to dismiss Plaintiff's negligent and intentional misrepresentation

---

[11] In her opposition brief, Plaintiff argues that a duty of care arises under the doctrine of negligence per se. However, the doctrine of negligence per se is not relevant to the inquiry of whether Wells Fargo had a common law duty of care, because that doctrine merely "creates an evidentiary presumption" and "there still must be a valid underlying cause of action for negligence for the doctrine to apply," meaning that the defendant "must have owed a duty of care to [the plaintiff]." *Millard v. Biosources, Inc.*, 156 Cal. App. 4th 1338, 1353 & n.2 (2007).

14

1 claims. Plaintiff does not oppose the motion to dismiss her intentional misrepresentation claim
2 and the motion is therefore granted as to that claim.

**1) Negligent Misrepresentation**

The elements of a cause of action for negligent misrepresentation are (1) a misrepresentation, (2) with absence of reasonable grounds for believing the alleged misrepresentation to be true, (3) with the intent to induce another's reliance on the misrepresentation, (4) actual and justifiable reliance, and (5) resulting damage. *Bock v. Hansen*, 225 Cal. App. 4th 215, 231 (2014). As with negligence, liability for negligent misrepresentation rests upon the existence of a legal duty, imposed by contract, statute, or otherwise, owed by the defendant to the injured person. *Id*. at 228. Further, in federal court, a claim of negligent misrepresentation must be pled in accordance with the particularity requirements of Rule 9(b). *See Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp. 2d 1101, 1141 (C.D. Cal. 2003). That is, the facts supporting the alleged misrepresentation be pled with specificity, and conclusory allegations are insufficient. *Id*. (citing *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)).

Plaintiff's negligent misrepresentation claim fails because as with her negligence claim Plaintiff has not established that Wells Fargo owed her a duty of care. *See Eddy v. Sharp*, 245 Cal. Rptr. 211, 213 (Ct. App. 1988) ("As is true of negligence, responsibility for negligent misrepresentation rests upon the existence of a legal duty ... owed by a defendant to the injured person."); *see also Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1068 (N.D. Cal. 2013); *Hunt v. Wells Fargo Bank, NA*, 576 Fed.Appx. 693, 694 (9th Cir. 2014).

Wells Fargo contends that the claim also fails because Plaintiff has not alleged reliance with sufficient specificity. Wells Fargo emphasizes that Plaintiff has not alleged that she was induced to do or not do anything based on the alleged misrepresentations. Indeed, although Plaintiff alleges that she relied on the misrepresentations regarding Wells Fargo's willingness to consider her for a loan modification rather than "taking additional steps to save her property from impending foreclosuree," she does not identify any particular steps that she would have taken but for the misrepresentation. (FAC ¶ 70.) This is inadequate. *See Rossberg v. Bank of Am., N.A.*,

15

219 Cal. App. 4th 1481, 1500 (2013), as modified on denial of reh'g (Sept. 26, 2013) (dismissing negligent misrepresentation claim because plaintiffs "failed to allege any connection between their reliance on the promised loan modifications and any specific damages that reliance caused.).

Accordingly, Plaintiff's negligent misrepresentation claim is dismissed for failure to state a claim.

**E. California Business and Professions Code Section 17200**

To state a claim for unfair competition pursuant to California Business and Professions Code § 17200, a plaintiff must allege an "unlawful, unfair, or fraudulent business act or practice" or "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. To have standing to bring suit pursuant to § 17200, a plaintiff must "make a twofold showing: he or she must demonstrate injury in fact and a loss of money or property caused by unfair competition" *Peterson v. Cellco Partnership*, 164 Cal.App.4th 1583, 1590 (2008). The UCL's "'lost money or property' requirement ... requires a plaintiff to demonstrate 'some form of economic injury' as a result of his transactions with the defendant.'" *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) (citing *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 320 (2011)). If no foreclosure sale has taken place, plaintiff cannot show financial loss. *Gieseke v. Bank of Am., N.A.*, No. 13-CV-04772-JST, 2014 WL 718463, at *6 (N.D. Cal. Feb. 23, 2014).

Plaintiff's section 17200 claim fails because as she admits it is derivative of her HBOR, negligence, and negligent misrepresentation claims. Because the Court dismisses each of those claims for failure to state a claim, she likewise cannot state an unfair competition claim. In addition, Plaintiff has not alleged financial loss as no foreclosure sale has taken place. *See Gieseke*, 2014 WL 718463 at *6. Her response that Defendant's conduct "opens the door to a recording of a Notice of Trustee sale, which would add more fees on the loan" is insufficient. (Dkt. No. 16 at 26:22-24.) The "loss of property in a future foreclosure sale cannot help Plaintiff meet her burden of demonstrating standing." *Ford v. Lehman Bros. Bank, FSB*, No. 12-00842 CRB, 2012 WL 2343898, at *8 (N.D. Cal. June 20, 2012). Likewise, Plaintiff's generic allegation that she suffered "loss of money and property, including late fees, foreclosure fees, and attorney's fees" is inadequate where, as here, Plaintiff was already in default and no foreclosure proceedings

have occurred beyond the recording of the Notice of Default. (FAC ¶ 95.)

Accordingly, Plaintiff's California Business and Professions Code section 17200 claim is dismissed.

## CONCLUSION

For the reasons stated above, Well's Fargo's motion to dismiss is GRANTED IN PART and DENIED IN PART. Since it is possible that the flaws in the FAC can be cured by the allegation of other facts, the Court grants Plaintiff leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Any second amended complaint must be filed within 21 days of the date of this Order and must clearly and concisely state the basis for all claims alleged.

This Order disposes of Docket No. 14.

**IT IS SO ORDERED.**

Dated: June 7, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge